TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos Almacenes Pitusa, Inc., en adelanté, Almacenes Pitusa, uno de los demandados del caso de autos, solicitando la revocación de una Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante dicho dictamen, el tribunal a quo declaró Con Lugar la demanda incoada.
Por las razones que expresamos a continuación, se modifica la Sentencia apelada.
I
Conforme surge del recurso ante nuestra consideración, el 10 de abril de 1996, Angel Vázquez Vega y Luz Aida Madera, por sí y en representación del menor Kermit Vázquez Madera, incoaron una demanda sobre daños y perjuicios. Dicha demanda se interpuso, entre otras partes, en contra de Almacenes Pitusa, Benjamín Acevedo, gerente del establecimiento y Félix Ramírez, guardia de seguridad de la tienda. Génesis de dicha acción lo fue un incidente ocurrido el 10 de diciembre de 1996 en el local de Almacenes Pitusa en el Municipio de Yauco, siendo el perjudicado el menor Kermit Vázquez Madera, en adelante Kermit.
Trabada la controversia de autos; y luego de los trámites procesales de rigor, el 8 de noviembre de 2001, notificada el 29 de enero de 2002, el tribunal a quo emitió la Sentencia apelada. Mediante la misma, declaró Con Lugar la demanda incoada. En su consecuencia, concedió a Kermit la suma ascendente a $20,000 como compensación por los daños sufridos y a cada uno de sus padres, $5,000. Asimismo, impuso el pago de $4,000 por concepto de honorarios de abogados.
Así las cosas, Almacenes Pitusa presentó el 5 de febrero de 2002, mociones de reconsideración y de *1005 determinaciones de hechos adicionales. La primera de dichas mociones no fue considerada; sin embargo, la solicitud de determinaciones de hechos adicionales fue considerada y resuelta el 11 de junio de 2002, notificada el 20 de junio de 2002.
Inconforme con la Sentencia emitida, el 8 de julio de 2002, Almacenes Pitusa acude a esta Curia. El recurso fue presentado por la Secretaría de este Tribunal como un certiorari. El 9 de septiembre de 2002, acogimos el recurso instado como una apelación. Con el beneficio de la transcripción de la prueba y el alegato de la parte apelada, procedemos a resolver.
II
En el recurso, Almacenes Pitusa plantea que incidió el Tribunal de Primera Instancia al resolver contrario a la prueba y al balance más racional, lógico y justiciero; al conceder daños no probados; y al otorgar honorarios de abogado en ausencia de prueba que demuestre la existencia de temeridad.
III
Es norma claramente establecida por el Tribunal Supremo de Puerto Rico que en ausencia de error manifiesto, pasión, prejuicio o parcialidad, no se intervendrá a nivel apelativo con las determinaciones de hechos y adjudicación de credibilidad hecha en instancia por el juzgador de los hechos. Argüello v. Argüello, 154 DPR _(2001), 2001 JTS 127; Trinidad v. Chade, 153 D.P.R._(2001), 2001 JTS 10; Quiñones v. Manzano, 141 D.P.R. 139 (1996); Orta v. Padilla, 137 D.P.R. 927 (1995); Vélez v. Srio. de Justicia, 115 D.P.R. 529 (1984); Ortiz v. Cruz Pabón, 103 D.P.R. 939 (1975); Rodríguez v. Concreto Mixto, Inc., 98 D.P.R. 579 (1970).
Un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia. Argüello v. Argüello, supra. La determinación de credibilidad del tribunal sentenciador es merecedora de gran deferencia por parte del tribunal apelativo, por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos. Id.; Pueblo v. Bonilla Romero, 120 D.P.R. 92 (1987). El juez sentenciador, ante quien deponen los testigos, es quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones y, por consiguiente, de ir formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad. Argüello v. Argüello, supra.
“[L]a declaración de un testigo no contradicho sobre un hecho determinado, debe merecer crédito, a no ser que su versión sea físicamente imposible, inverosímil o que por su conducta en la silla testifical se haga indigno de crédito". Miranda Soto v. Mena Eró, 109 D.P.R. 473 (1980); Alicea v. Sucn. F. Gil Rivera, 87 D.P.R. 789 (1963); Villaronga, Com. v. Tribl. de Distrito, 74D.P.R. 331 (1953).
Aunque, de ordinario, el foro apelativo no interviene con la apreciación de la prueba que hacen los tribunales de instancia, sí lo hace cuando un balance racional, justiciero y jurídico de la totalidad de la prueba y de los documentos que obran en autos lleva a conclusiones distintas a las del tribunal de instancia. Negrón Rivera y Bonilla, Ex Parte, 120 D.P.R. 61 (1987).
Un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la prueba desfilada. Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985); Pérez v. Hosp. La Concepción, 115 D.P.R. 721, 728 (1984). No obstante, está claro que el arbitrio del juzgador de hechos es respetable, mas no absoluto. Por eso, una apreciación errónea de la prueba no tiene credénciales de inmunidad frente a la función revisora de un tribunal apelativo. Véase, Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8 (1987); Vélez v. Srio. de Justicia, supra.
En conclusión, reiteramos una vez más la norma fundamental de nuestro ordenamiento jurídico de que los *1006 tribunales apelativos, en ausencia de error, pasión, prejuicio o parcialidad, no deben intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad realizadas por los tribunales de instancia. Trinidad v. Chade, supra.
IV
Con este trasfondo fáctico y normativo, analicemos la controversia del caso ante nos.
Almacenes Pitusa plantea que el Tribunal de Primera Instancia incidió al emitir un dictamen contrario a la prueba presentada. Sostiene que las conclusiones del tribunal a quo son claramente erróneas, lo que justifica la intervención revisora de este Tribunal. Nos compete, entonces, evaluar si mediante la Sentencia apelada el foro de instancia abusó de su discreción de manera arbitraria, caprichosa y/o irracionalmente a favor de alguna de las partes.
Una simple lectura de la transcripción de la prueba presentada por Almacenes Pitusa es suficiente para concluir de manera meridiana que el error no fue cometido. Veamos.
Desfilada la prueba del caso, el Tribunal de Primera Instancia determinó los siguientes hechos:

“1. El 10 de diciembre de 1996, el menor Kermit Vázquez Madera, asistió a la Escuela José Onofre, de Yauco, donde estudiaba el noveno grado.

2. Entre as 10:30 a.m. a 11:00 a.m., se dirigió, en unión a tres compañeros de clase, hacia el centro del pueblo a visitar las tiendas.

3. Entraron a la Tienda Pitusa, ubicada en la Calle Comercio, esquina Pacheco, para ver Unos carros y una grabadora de juguete que unos compañeros habían comprado allí.

4. Al entrar, dejaron sus bultos escolares en un mostrador que hay eri* la entrada y se dispusieron a ver la mercancía de las góndolas, en búsqueda de los juguetes que les interesaban.

5. El menor Kermit Vázquez Madera se percató de que un hombre -que se describe como alto, fornido y de pelo canoso-, los comenzó a seguir y para ello se escondía entre las góndolas tratando de no ser visto. Esta persona es el codemandado Félix Ramírez Cruz.

6. Con el fin de acelerar la búsqueda de los juguetes, el codemandante Vázquez Madera y sus compañeros, se dividieron en dos grupos y tomaron pasillos distintos. El menor codemandante y su amigo Pedro Rodríguez Toro encontraron la grabadora y tomaron dos de ellas para mostrárselas a sus compañeros. Una vez se reunieron de nuevo, se dirigieron a la góndola donde estaban las grabadoras para decidir cuál iban a comprar. Uno de ellos decidió irse y salió de la tienda, quedando solamente tres.

7. De repente, se les acercó el codemandado Benjamín Acevedo, Gerente de la tienda, y les ordenó: “párense ahí”. Se detuvieron los tres menores y en ese momento llegó el otro empleado, que resultó ser el que los había estado siguiendo desde que entraron a la tienda, el codemandado Félix Ramírez Cruz.

8. Este último les ordenó que fueran a la oficina. El menor codemandante le preguntó dónde estaba la oficina. El señor Acevedo comenzó a caminar por uno de los pasillos y los tres menores lo siguieron, detrás iba el guardia de seguridad. Sin embargo, no fueron a oficina alguna, sino al almacén.

9. Una vez dentro del almacén, rodeados por cajas de mercancía,., el gerente Benjamín Acevedo, les preguntó a los jóvenes: ¿dónde está la mercancía? El menor codemandante le contesta: “¿Qué mercancía? ... nosotros no 
*1007
tenemos nada”. En el almacén se encontraba otro empleado que permaneció allí durante el interrogatorio.

10. El codemandado Acevedo les dice enérgicamente: “los estábamos viendo y ustedes tienen mercancía, así que sáquenla”. Ellos contestaron en la negativa y el guardia de seguridad y codemandado Félix Ramírez Cruz les ordenó que viraran sus bolsillos y así lo hicieron.

11. Una vez observó que no tenían nada, el guardia de seguridad les dijo: “quien sabe si tienen la mercancía dentro de su ropa”. El menor codemandante, en su deseo de probar que no tenía nada y sumamente asustado, procedió a quitarse la camisa y mostrar que no había mercancía en su poder. Luego se abrió el botón del pantalón y lo bajó para probar que no tenía nada en la entrepierna o en el área genital.

12. El menor se sintió amedrentado y amenazado en su seguridad personal y procedió a quitarse parcialmente la ropa para probarle a estos empleados que no tenía mercancía alguna oculta en su ropa.

13. Los codemandados, al percatarse de que los menores estaban diciendo la verdad, los llevaron hasta la puerta de la entrada y los sacaron de la tienda. El guardia de seguridad les advirtió que no entraran más al establecimiento.

14. Tan pronto el menor abandonó la tienda, se dirigió a su hogar y le contó a su madre lo ocurrido. Esto le causó angustia, pues sentía que la intimidad de su hijo había sido violentada de forma crasa. Se angustió aún más al saber que los hechos ocurrieron en el almacén de la tienda y que su hijo había estado solo, acorralado, a merced de dos personas totalmente desconocidas y que tuvieron el control total de la situación y en presencia de un tercero, también desconocido para él.

15. Posteriormente, al llegar su esposo, le narró lo que había pasado con su hijo. Estos procedieron a orientar a su hijo y le indicaron que se abstuviera de ir a dicha tienda hasta tanto se orientaran legalmente y determinaran la acción que habrían de seguir.

16. El menor Kermit Vázquez Madera declaró deforma clara los hechos.

17. El incidente que tuvo el demandante con los codemandados lo traumatizó de manera tal que cuatro años después no lo ha olvidado y los efectos fueron tan nocivos a su salud mental y emocional que al día de hoy no se atreve entrar a la tienda en que ocurrieron los hechos.

18. El codemandante indicó que él fue al salón que le correspondía a las 10:30 a.m.-ll:20 a.m., pero que al no ver allí a su maestra, se fue para las tiendas del pueblo. La parte demandada presentó, para controvertir el testimonio del demandante, una lista en la cual aparece que la maestra firmó como estuvo presente en la escuela ese día; sin embargo, la propia representante de la escuela admitió que era posible que la maestra fuera a la escuela, pero que no diera clase.

19. La parte demandada presentó copia del Registro de Asistencia que indicaba que el codemandante estaba allí, en el salón de clases de 10:30 a.m. a 11:20 a.m.; sin embargo, la testigo admitió que la norma administrativa es que se pase lista al entrar los jóvenes al salón, pero que ella, para cotejar, pasaba lista de nuevo al salir. Admitió inclusive que era posible que un joven estuviera presente al comenzar la clase y al finalizarla no, por haber abandonado el salón.

20. La representante de la escuela, señora Sonia Lozano Arvelo, a pesar de que era una testigo cuyo propósito era presentar unos documentos oficiales, y que se supone que fuera imparcial en su declaración, se mostró sumamente hostil hacia la representación legal de la parte demandante, durante su contrainterrogatorio. Entendemos que su expresión verbal y no verbal denotaron parcialidad, por lo cual su testimonio fue evaluado 
*1008
con recelo por este Tribunal.

21. La señora Sonia Lozano Arvelo no pudo dar fe sobre la veracidad de la información incluida en los documentos oficiales que se presentaron en evidencia.

22. Toda la declaración sobre los hechos expuestos por el codemandante fue corroborada por el testigo Pedro Rodríguez Toro. La parte demandada alegó que estos hechos son producto de la imaginación de un joven de catorce años; sin embargo, es altamente improbable que dos personas distintas con personalidades, conocimientos y vivencias distintas, puedan tener la misma fantasía. Dicho testigo nos mereció total credibilidad.

23. Tanto el menor demandante como el testigo Rodríguez Toro pudieron describir el área del almacén y de la oficina, a pesar de que dicha área no está expuesta al público. El representante legal de los demandados en ningún momento cuestionó lo declarado por ambos testigos sobre el lugar a que fueron llevados.

24. El testimonio de la madre del codemandante, Luz Aída Madera, fue claro y contundente. Es ella quien recibe a su hijo, todavía nervioso y asustado por lo que le había pasado. Ella declaró como estaba su salud emocional y física en el momento en que llega a su casa, minutos después de haber ocurrido los hechos. Su padre, Angel Vázquez Vega, testificó que en horas de la tarde, después de las 4:00p.m., cuando llega a su casa, su hijo todavía se veía nervioso y asustado, impresionado por lo que le había ocurrido.

25. La parte codemandada, Almacenes Pitusa, tiene un reglamento sobre las normas a seguir cuando se tiene sospecha de que alguien ha cometido hurto dentro de la tienda.

26. Ambos codemandados, Acevedo González y Ramírez Cruz, admitieron que de probarse los hechos aquí alegados, podrían ser expulsados de su empleo.

27. A nuestro juicio, ambos lucieron evasivos y su lenguaje no verbal o corporal les restó credibilidad, especialmente al codemandado Félix Ramírez Cruz. Este se observó nervioso, inclusive comenzó su declaración señalando no conocer las alegaciones del demandante, cuando había sido emplazado con copia de la demanda.

DETERMINACIONES DE HECHOS ADICIONALES

1. El 10 de diciembre de 1996, el menor Kermit Vázquez asistió a la Escuela José Onofres en Yauco, donde estudia el 9no. Grado. El horario de clase es de 8:00 a.m. a 1:30p.m.

2. Según el récord de la Escuela José Onofres, el demandante tenía clase de español, de 10:30 a 11:20 a.m. y de ciencias, de 12:40 a 1:30p.m.

3. La señora Sonia Lozano indicó que estaba prohibido la salida de estudiantes del plantel durante el período de clases, pero que los estudiantes salían y entraban del plantel y que nadie los detenía.

4. Que luego de salir de la escuela entre 10:30 y 11:00 a.m., el demandante, junto a tres otros estudiantes, fueron a la tienda Pitusa en el pueblo de Yauco, en busca de una minigrabadora.

5. Que el estudiante Pedro Rodríguez (Piri) cogió la minigrabadora en sus manos y caminó con el demandante hasta la parte de atrás de la tienda. Allí, Pedro Rodríguez colocó la grabadora en una góndola distinta y procedieron a salir de la tienda, no sin antes dividirse y caminar por rumbos apartes.

*1009
6. La codemandante, Luz Aida Madera, acudió dos veces por mes a la escuela a verificar el progreso escolar de su hijo en la escuela.

7. El 12 de diciembre de 1998, la codemandante, '■Luz Aida Madera, acudió al pueblo de Yauco en busca de asesoramiento legal. Luego de hablar con un abogado, fue a la tienda Pitusa, con su hijo, para identificar al gerente y al guardia de seguridad. Aun cuando estuvieron a una distancia no mayor de 20 pies, los demandantes no confrontaron al gerente ni al guardia de seguridad, para saber qué había ocurrido. Tampoco radicó denuncia alguna, ante la Policía de Puerto Rico.

8. El demandante Kermit Vázquez continuó asistiendo a su escuela todo el resto del año 1996 y todo el año 1997. No tuvo necesidad de acudir a un médico ni tuvo que tomar medicamentos. ”

Evidentemente, las determinaciones de hechos del Tribunal de Primera Instancia denotan que dicho foro le otorgó entera credibilidad al testimonio de Kermit. Dicho testimonio fue sustentado, a su vez, por lo declarado por el testigo Pedro Rodríguez Toro, víctima también del incidente ocurrido. Al respecto, sólo merece señalarse que la “declaración de un testigo no contradicho sobre un hecho determinado, debe merecer crédito, a no ser que su versión sea físicamente imposible, inverosímil o que por su conducta en la silla testifical se haga indigno de crédito”. Miranda Soto v. Mena Eró, supra; Alicea v. Sucn. F. Gil Rivera, supra; Villaronga, Com. v. Tribl. de Distrito, supra.
Sin embargo, Almacenes Pitusa sostiene que el testimonio de Kermit fue contradictorio y, por consiguiente, increíble. Argumentan que el menor declaró en sala que no asistió a su clase de español con la maestra Semidey el día de los hechos porque ésta no se encontraba en el salón de clases. Lo anterior, no obstante haber aseverado, al ser depuesto, que la profesora había faltado a clases ese día. Aduce Almacenes Pitusa que este hecho, sumado a que en los registros de la Escuela José Onofre Torres, consta la asistencia de la maestra Semidey y de Kemút, son suficientes para determinar que el menor tenía previamente planeado faltar a clases para irse al “pueblo”, según el menor declarara a la fecha de ser depuesto. (Véase, Ap. p. 35). Argumenta Almacenes Pitusa que esta circunstancia debió de ser tomada en consideración por el tribunal a quo al dirimir la credibilidad que debía adjudicarse al testimonio de Kermit en sala, a los fines de catalogar el mismo como poco probable.
De entrada queremos señalar que aun cuando fuera nuestra pretensión, y no lo es, no podríamos pasar juicio sobre si la mencionada incongruencia en las declaraciones de Kermit fue considerada por el foro de instancia al adjudicar la credibilidad que le mereciere el testimonio de éste. Más aún, el mismo no resulta necesario para la solución de la presente controversia.
Asumiendo que Kermit cometió el reprochable acto de faltar deliberadamente y sin excusas a clases, esta circunstancia no afecta en la procedencia de la causa de acción incoada. De igual forma, tampoco afecta a la causa de acción el que exista una disposición reglamentaria que prohíba a los estudiantes salir del plantel escolar hasta pasadas las tres de la tarde. Cabe puntualizar que la parte apelada logró establecer como realidad fáctica, mediante el testimonio de la propia directora Sonia Lozano, que los estudiantes salen del plantel libremente durante el horario escolar.
Por otro lado, no creemos que el tribunal a quo estuviera ajeno a la posibilidad de que Kermit se pudiera haber escapado del plantel escolar el día de los hechos. No obstante, nuestro ordenamiento reconoce que la máxima falsus in uno, falsus in omnitus no autoriza a rechazar toda la declaración de un testigo porque se haya contradicho o faltara a la verdad en parte de su testimonio. Pueblo v. Pagan Ortiz, 130 D.P.R. 470, 483 (1992); Pueblo v. Méndez Feliciano, 90 D.P.R. 449 (1964).
El tribunal tenía prueba suficiente para concluir que Kermit salió aproximadamente a las 10:30 de su *1010 escuela y en unión a tres amigos se dirigió al “pueblo” en Yauco y visitó la Tienda Pitusa. Nada de lo aducido por Almacenes Pitusa hace esta determinación del tribunal a quo irracional o caprichosa. Los testimonios que dan base a las mismas están lejos de ser inverosímiles. No resulta físicamente imposible que un estudiante salga a las 10:30 a.m. de la Escuela José Onofre Torres y se vaya caminando al centro del pueblo de Yauco y acuda a la tienda Pitusa allí ubicada. En consecuencia, esta Curia no intervendrá con dicha determinación del Tribunal de Primera Instancia. Argüello v. Argüello, supra; Sánchez Rodríguez v. López Jiménez, supra; Pérez v. Hosp. La Concepción, supra.
Por otro lado, como parte del primer error, Almacenes Pitusa aduce, además, que tanto Kermit como Pedro Rodríguez declararon haber encontrado la mini grabadora en la parte posterior de la tienda mientras en la deposición, el primero mencionó que la misma estaba en la parte del frente de la tienda. También alega Almacenes Pitusa que Kermit se contradijo al declarar en sala que la razón para tomar rutas diferentes era acelerar el proceso de búsqueda de la mini grabadora de juguete que pretendían adquirir. No obstante, en la deposición aseveró no saber las razones por las cuales se separaron.
Con relación a lo anterior, cabe destacar, que la declaración de un testigo no tiene que ser perfecta. Recalcamos que en nuestra jurisdicción no rige la norma que establece que por el hecho de que un testigo mienta en parte de su declaración, tiene que rechazarse el resto de la misma {Falsus in uno, falsus in omnibus) Quintana Tirado v. Longoria, 112 D.P.R. 276 (1982). Es lógico y altamente probable que un testigo cometa contradicciones, en especial, si es un menor de edad.
Sobre el impacto de dichas incompatibilidades en la credibilidad del testimonio, ha señalado el Tribunal Supremo:

“...un examen minucioso del referido testimonio revela que a pesar de que dicho testigo efectivamente incurrió en una serie de contradicciones e inconsistencias, [sic] las mismas no versan sobre los puntos verdaderamente críticos de su testimonio; más bien, se refieren a detalles y hechos sobre los cuales la mente humana puede olvidar o confundir. Después de todo, debemos recordar que no existe testimonio “perfecto ”, el cual, de ordinario, en lugar de ser indicativo de veracidad, es altamente sospechoso, por cuanto, por lo general, es producto de fabricación. Aun aceptando a los fines de la argumentación, que las contradicciones fueran de índole sustancial, debe mantenerse presente que “cuando un testigo se contradice, lo que se pone en juego es su credibilidad” y que es “al jurado o al juez de instancia a quien le corresponde resolver el valor de su restante testimonio ”. ”

Pueblo v. Cabán Torres, 117 D.P.R. 645 (1986).
En resumen, un examen sereno, detallado y desapasionado de la declaración de Kermit no produce en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que amerite que intervengamos con la credibilidad que le mereciera el testimonio del referido testigo al juzgador de los hechos a nivel de instancia.
V
En vista de que Almacenes Pitusa impugna la determinación del Tribunal de Primera Instancia con base en la cuantía de indemnización concedida, por considerarlas excesivas y que no se ajustan a la prueba desfilada en juicio, compete la discusión normativa sobre el resarcimiento de daños.
En nuestro ordenamiento, la responsabilidad civil en daños y perjuicios postula el deber de resarcir al damnificado, otorgándole un valor económico al daño sufrido. Rivera v. Tiendas Pitusa, Inc., 148 D.P.R. (1999), 99 J.T.S. 107; S.L.G. v. F.W. Woolworth & Co.j 143 D.P.R. 76 (1997); García Pagán v. Shiley Caribbean, etc., 122 D.P.R. 193 (1988).
*1011 Por daño se entiende todo aquel menoscabo material o moral que a consecuencia de un acontecimiento o evento determinado sufre una persona, ya bien sea en sus bienes vitales naturales, en su propiedad o en su patrimonio. Cintrón Adorno v. Gómez, 147 D.P.R. 576 (1999); Galib Frangie v. El Vocero de P.R., 138 D.P.R. 560 (1995); García Pagan v. Shiley Caribbean, etc., supra.
Este menoscabo se clasifica, de ordinario, en daño patrimonial y no patrimonial. Como daños patrimoniales se entienden aquéllos que producen un menoscabo cuantificable en dinero sobre los intereses patrimoniales del pequdicado. Mientras los no patrimoniales son, en principio, aquéllos cuya valorización en dinero no tienen una base equivalente que caracteriza a los patrimoniales, por afectar precisamente a elementos o intereses de difícil valoración pecuniaria. Galib Frangie v. El Vocero de P.R., supra.
El resarcimiento o indemnización pecuniaria consiste en atribuir al perjudicado la cantidad de dinero suficiente para compensar su interés perjudicado. Es como una subrogación real en que el dinero ocupará el lugar de los daños y perjuicios sufridos, siendo una atribución pecuniaria que crea una situación patrimonial que equivale a la destruida por el daño causado. Rivera v. Tiendas Pitusa, Inc., supra; S.L.G. v. F.W. Woolworth & Co., supra; García Pagan v. Shiley Caribbean, etc., supra.
Ocasionando un menoscabo en la esfera jurídica de otra persona, la reparación que procede consiste en reintegrar esa esfera lesionada a su estado anterior al daño. Sólo cuando no sea posible esa reintegración al estado originario, se acudirá a verificar la reparación en dinero. Galib Frangie v. El Vocero de P.R., supra; Rodríguez Cancel v. A.E.E, 116 D.P.R. 443 (1985).
Por lo que la reparación puede verificarse de dos formas: (1) la reparación natural o reintegración en forma específica, o (2) la indemnización en dinero. Estas dos alternativas son mutuamente excluyentes. Galib Frangie v. El Vocero de P.R., supra; Rodríguez Cancel v. A.E.E, supra.
La alternativa inicial de restablecer al perjudicado a la situación en que se hallaba antes de sufrir el daño constituye la solución ideal, por lo que únicamente debe acudirse a la indemnización en dinero si el restablecimiento de la condición original no es factible. Galib Frangie v. El Vocero P.R., supra.
En el segundo caso, el dinero muchas veces no puede ser paragonado con el dolor padecido, pero con éste se persigue proporcionar a la víctima una compensación que, sin llegar a devolverle lo perdido, le permita procurarse placeres y satisfacciones, psíquicas o mentales, aptas para atenuar el dolor sufrido. Cintrón Adorno v. Gómez, supra; Riley v. Rodríguez de Pacheco, 119 D.P.R. 762 (1987).
El derecho a ser compensado no puede derrotarse meramente por el carácter especulativo que en alguna medida supone el cómputo de los daños. Rivera v. Tiendas Pitusa, Inc.,-supra, S.L.G. v. F.W. Woolworth & Co., supra.
No obstante, al medir los daños en un caso, el juzgador debe hacerlo sobre una estricta base de correspondencia con la prueba, procurando siempre que la indemnización no se convierta en una industria y que no lesione la economía. Este deber de los jueces tiene el propósito de conservar el sentido remediador y no punitivo de nuestra responsabilidad civil. Rivera v. Tiendas Pitusa, Inc., supra; S.L.G. v. F.W. Woolworth & Co., supra. Por ejemplo, los sufrimientos mentales y físicos son cuantificables al infinito, por lo que sin unos límites razonables, la indemnización dejaría de tener la característica de resarcimiento para convertirse en una punitiva. Riley v. Rodríguez de Pacheco, supra.
La gestión judicial de estimación y valorización de los daños es, pues, una difícil y angustiosa labor, al no existir un sistema mecánico que nos permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas. Nieves Cruz v. U.P.R., 151 D.P.R._(2000), 2000 J.T.S. 91; Blas v. Hosp. *1012 Guadalupe, 146 D.P.R. 267 (1998); Rodríguez Cancel v. A.E.E, supra.
Mientras tanto, esta labor descansa en la sana discreción del juzgador. Los tribunales de instancias están en principio en una mejor posición para apreciar y determinar los daños sufridos. Ello es así, en cuanto son éstos los que tienen contacto directo con la prueba que a esos efectos presenta la parte que los reclama. Blas v. Hosp. Guadalupe, supra', Rodríguez Cancel v. A.E.E, supra.
De ahí surge una norma de abstención judicial. Conforme a ésta, un foro apelativo no interviene, de ordinario, con la adjudicación de los daños realizada por el Tribunal de Primera Instancia, a menos que la cuantía concedida resultase ridiculamente alta o extremadamente baja. En todo caso, la parte que solicita la modificación de las sumas concedidas a nivel de primera instancia, viene obligada a demostrar la existencia de circunstancias que lo justifiquen. Nieves Cruz v. U.P.R., supra', Rivera v. Tiendas Pitusa, Inc., supra; Blas v. Hosp. Guadalupe, supra; S.L.G. v. F.W. Woolworth & Co., supra; Toro Aponte v. E.L.A., 142 D.P.R. 464 (1997).
Ahora bien, ello no implica una renuncia de nuestra función revisora cuando la compensación ordenada está desprovista de apoyo en el récord. Véase, Sanabria v. Estado Libre Asociado, 132 D.P.R. 769 (1993); Riley v. Rodríguez de Pacheco, supra; Urrutia v. A.A.A., 103 D.P.R. 643, 648 (1975).
El Tribunal de Primera Instancia no tiene discreción para imponer a la parte demandada el pago de una cuantía arbitraria o excesiva, que se aparte de la finalidad reparadora del estatuto. Blas v. Hosp. Guadalupe, supra; S.L.G. v. F.W. Woolworth & Co., supra.
VI
En virtud de lo anterior, y luego de haber examinado detenidamente la trascripción de la prueba, somos de la conclusión de que las sumas concedidas por el Tribunal de Primera Instancia deben ser modificadas. Veamos.
Como es sabido, al medir los daños en un caso, el juzgador debe hacerlo sobre una estricta base de correspondencia con la prueba, procurando siempre que la indemnización no se convierta en una industria y que no lesione la economía. Rivera v. Tiendas Pitusa, Inc., supra; S.L.G. v. F.W. Woolworth & Co., supra.
A tales fines, la única prueba presentada por la parte apelada tendente a establecer el daño sufrido por la madre de Kermit, lo constituyó su propio testimonio. Esta declaró en lo pertinente:

“P ¿Cómo usted se sintió cuando él (Kermit Vázquez) le da...le narra a usted estos incidentes que habían ocurrido?

R Pues imagínese, me sentí esto...eh...me afecte emocionalmente, en el sentido de que sea, yo entiendo que mi hijo no era, no es un bandido, sabe para tratarlo de esa manera, o sea, eh... y me asusté... o sea pensando en que ...él... él... estaba dentro de un almacén, o sea, estaba solo, dos menores solos... y a esta fecha yo no sé, si en algún momento, pues este se hizo algo más que él no ha querido contarme, o sea, y pues... esto ... pues consternada...porque... pues yo entiendo que esa no es la manera que debieron haber procedido con él, y pues... esto... pues y hasta la fecha como él dice, pues no ha asistido más y no ha ido más a la tienda, pues él realmente se ha sentido muy incomodo con todo esto que pasó... y pues este... pues a mi, pues todavía sinceramente, pues me... me afecta en el sentido de que... Pues, lo que le hicieron a él, se lo pudieron haber hecho a cualquier otra persona, y pues... sabe, esto... eh... sufrir este tipo de daño así, pues, sinceramente, todavía, todavía lo pienso, y todavía, pues, me afecta

[[Image here]]
*1013 La partida de sufrimientos y angustias mentales tiene la finalidad de indemnizar el dolor, los sufrimientos físicos y las angustias mentales que padece una persona como consecuencia del acto culposo o negligente. Elba ABM v. U.P.R., 125 D.P.R. 294 (1990); Acosta & Rodas, Inc. v. PRAICO, 112 D.P.R. 583 (1982); Ramos Rivera v. E.L.A., 90 D.P.R. 828 (1964).
Este dolor o sufrimiento mental, por su naturaleza, es uno difícil de valorar o cotizar. En vista de que cada ser humano goza de elementos físicos y mentales distintos y valores distinguibles, nuestro ordenamiento exige que todo reclamante, en cada caso, aporte factores de evidencia necesarios para evaluarlos justa y adecuadamente, probando que no se trata de una simple pena pasajera, sino que, en alguna manera apreciable, el reclamante realmente quedó afectado en su salud, bienestar y felicidad. Moa v. E.L.A., 100 D.P.R. 573 (1972).
Es ostensible que la prueba presentada en el presente caso, no es suficiente para cuantificar el daño sufrido por la madre y el padre de Kermit. El sufrimiento de los padres por los desafortunios de sus hijos es muchas veces una situación incuestionable. No empero, las circunstancias particulares de este caso, no nos permiten validar la determinación del tribunal a quo. Procedemos, pues, a armonizar las sumas concedidas con la prueba presentada, y reducirlas a la cantidad de $1,000.00 cada una.
En el caso de Kermit, la cantidad concedida nos resulta, igualmente, alta a la luz de la prueba desfilada. Sostiene nuestra determinación, la lectura de la transcripción de la prueba. Procede reducir la partida concedida a $10,000. Nuestra determinación es cónsona con las expresiones vertidas por el Tribunal Supremo a los efectos de que los tribunales de primera instancia deben medir y cuantificar los daños a base de la prueba que les fue presentada, evitando a toda costa que la indemnización se convierta en una industria y procurando que se mantenga su sentido remediador, no punitivo. Rivera v. Tiendas Pitusa, Inc, supra.
VII
Finalmente, Almacenes Pitusa se opone a la determinación del Tribunal de Primera Instancia al imponerle el pago de honorarios de abogado. Sostiene que no incurrió en temeraridad al litigar el presente caso.
Al respecto, la Regla 44.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 44.1, establece, en su inciso (d) que: “[e]n caso en que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. ”
Por su parte, la Regla 44.3(b), supra, R. 44.3 dispone, en lo pertinente:
“El tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés al tipo [correspondiente] ... desde la radicación de la demanda, en todo caso de daños y perjuicios> ... y hasta la fecha en que se dicte la sentencia a computarse sobre la cuantía de la sentencia... ”.
32 L.P.R.A. Ap. n, R. 44.3.
La condena en honorarios de abogado e intereses bajo las disposiciones anteriores, ha expresado el Tribunal Supremo de Puerto Rico, es imperativa cuando el tribunal sentenciador concluye que una parte ha sido temeraria. Dicha determinación ha de inferirse del pronunciamiento del tribunal imponiendo la condena de honorarios de abogado y/o de intereses. Rivera v. Tiendas Pitusa, Inc., supra; Pérez v. Col. de Cirujanos Dentistas de P.R., 131 D.P.R. 545, 563 (1992).
El propósito de la imposición de honorarios de abogado es sancionar al litigante perdidoso que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obliga a la otra parte a asumir innecesariamente las molestias, gastos, trabajo e inconveniencias de un pleito. Véanse, *1014 Fernandez v. S.J. Cement, 118 D.P.R. 713,718 (1987); Soto v. Lugo, 76 D.P.R. 444,448 (1954).
El Tribunal Supremo de Puerto Rico ha expresado que la acción que amerita la imposición de este tipo de condena es cualquiera que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o que produzca la necesidad de que otra parte incurra en gestiones evitables. Véase, Rivera v. Tiendas Pitusa, Inc., supra.
No constituye temeridad cuando existe una discrepancia honesta en tomo al derecho aplicable o cuando se trata de una cuestión novel, no resuelta por el Tribunal Supremo. Soc. de Gananciales v. Royal Bank de P.R., 145 D.P.R. 178 1998); Rivera v. A & C Development Corp., 144 D.P.R. 450(1997).
El Tribunal de Primera Instancia goza de amplia discreción en este tipo de determinaciones. Véanse, Miranda v. E.L.A., 137 D.P.R. 700 (1994); Ramírez v. Club Cala de Palmas, 123 D.P.R. 339 (1989); Fernández v. San Juan Cement, 118 D.P.R._, a la pág. 717; Raluán Corp. v. Feliciano, 111 D.P.R. 598 (1981). El Tribunal apelativo sólo intervendrá en este tipo de caso cuando el Tribunal de Primera Instancia hubiera abusado de su facultad. Ramos Báez v. Bossolo López, 143 D.P.R. 567 (1997); Cotto Morales v. Ríos, 140 D.P. R. 604 (1996).
Al cuantificar los honorarios de abogado por temeridad, los tribunales pueden tomar en consideración factores tales como la naturaleza del litigio, las cuestiones de derecho envueltas en el caso, la cuantía en controversia, el tiempo invertido, los esfuerzos y actividad profesional que hayan tenido que desplegarse y la habilidad y reputación de los abogados en el caso. Blás v. Hosp. Guadalupe, 146 D.P.R. 267 (1998).
El factor determinante en dicha determinación, sin embargo, habrá de ser el grado o intensidad de la conducta temeraria o frívola. Id.; CorpakArt Printing v. Ramallo Brothers, 125 D.P.R. 724 (1990).
Un análisis ponderado del trámite procesal del caso de autos revela que el tribunal a quo no abusó de su discreción al determinar que Almacenes Pitusa había sido temeraria en la litigación del caso. Los testimonios vertidos por los codemandados Pedro Rodríguez Toro y Félix Ramírez Cmz, gerente y guardia de seguridad de Almacenes Pitusa, respectivamente, especialmente el último de ellos, al negar total conocimiento de los hechos (aun los alegados en la demanda) denotan un alto grado de temeridad por parte de Almacenes Pitusa.
Sabido es que la acción que amerita honorarios de abogado es cualquiera que haga necesario un pleito que pudo evitarse, que lo prolongue innecesariamente, o que produzca la necesidad de que otra parte incurra en gestiones evitables. Fernández v. San Juan Co., Inc., 118 D.P.R. 713 (1987). Su propósito es establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconvenientes de un pleito. Los autos revelan que Almacenes Pitusa incurrió en temeridad en su defensa de este pleito al demorar su tramitación y negarse a admitir responsabilidad por el incidente. Ramírez v. Club Cala de Palmas, 123 D.P.R. 339, 349-350 (1989). De hecho, surge de la transcripción de la prueba que el Gerente y el guardia de seguridad de la tienda negaron en el juicio que hubieran intervenido con los menores.
No habiendo abusado el foro de instancia de su facultad al imponer honorarios de abogado a la parte, no intervendremos con la determinación de dicho magistrado. Ramos Báez v. Bossolo López, supra; Cotto Morales v. Ríos, supra.
VIII
Por los fundamentos expresados anteriormente, se modifica la Sentencia para reducir las partidas concedidas a los padres del menor Kermit Vázquez a $1,000.00 cada una. Asimismo, se modifica la partida concedida por el Tribunal de Primera Instancia a Kermit de $20,000 a $10,000. Así modificada, se confirma la *1015 Sentencia apelada.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida lleana Gquendo Graulau Secretaria General